UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE RIVAS,** | **1:16-cv-01473-LJO-JLT** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING IN PART AND DENYING IN PART DEEFENDANT'S MOTION TO DISMISS (ECF Nos. 5, 9)** |
| **v.** | |
| **WELLS FARGO BANK, N.A. and DOES 1 through 10, inclusive,** | |
| **Defendants.** | |

## I. INTRODUCTION

Plaintiff Jose Rivas ("Plaintiff" or "Rivas") brings this action against Defendants Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") and Does 1 through 50. Plaintiff alleges violations of the California Homeowner Bill of Rights ("HBOR") and California Unfair Competition Law ("UCL"), as well as breach of the covenant of good faith and fair dealing, negligence, and negligent infliction of emotional distress ("NIED").

This action stems from Plaintiff's unsuccessful attempts to modify his home mortgage loan with Defendant, which ultimately resulted in Defendant initiating foreclosure proceedings against Plaintiff. Now before the Court is Plaintiff's motion for remand (ECF No. 9) and Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 5). This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. <u>BACKGROUND</u>

**A.**     <u>Factual Allegations</u>

Plaintiff Jose Rivas owns a home in Shafter, a town in Kern County, California. (Complaint ("Compl") ¶¶ 1, 5, ECF No. 1-1.) Plaintiff financed his current home for $254,591.00 on or about August 19, 2008. (*Id.* ¶ 10.) Plaintiff executed a promissory note ("Note"), and concurrently executed a Deed of Trust as security for the note. (*Id.*) The Deed of Trust for the home was recorded as Document No. 0208131663 in the official records of the Kern County Recorder's Office. (*Id.*) Wells Fargo was identified as the lender in the Deed of Trust. Plaintiff occupies the home and it is his principal residence. (*Id.* ¶ 11.)

In October 2015, Plaintiff began experiencing financial hardship and struggled to keep up with his loan payments. (*Id.* ¶ 12.) Plaintiff contacted Wells Fargo, the servicer of his home loan, to seek assistance and to see if he would qualify for loan modification. (*Id.* ¶ 13.) A representative of Wells Fargo advised Plaintiff "that he would qualify for a loan modification but in order to apply he needed to be behind on his payments." (*Id.* ¶ 14.) The representative further informed Plaintiff that foreclosure proceedings would not commence during the loan modification review process if Plaintiff chose to apply. (*Id.*) "Relying on the advice given by his financial institution, Plaintiff temporarily withheld payments and submitted all requested documents to Wells Fargo to be considered for a loan modification." (*Id.* ¶ 15.)

Plaintiff regularly contacted Wells Fargo to obtain status updates on his application and was "repeatedly transferred from one representative to another who could not answer any of Plaintiff's questions or even confirm if his application was being reviewed." (*Id.* ¶ 16.) Plaintiff "asked Wells Fargo to provide him with a representative he could contact directly for assistance, which WELLS FARGO failed to do." (*Id.* ¶ 17.) On or about January 28, 2016, Plaintiff called Wells Fargo and was informed that his application had been denied due to insufficient income. (*Id.* ¶ 18) Despite repeated efforts, Plaintiff was not provided with an explanation for the denial, but was instead advised to apply

1   again if he was able to increase his income. (*Id.*) Plaintiff was not provided with written notice of the

2   denial, nor was he provided with any information regarding his right to appeal the denial. (*Id.* ¶ 19.)

3       On or about February 25, 2016, a Notice of Default and Election to Sell under Deed of Trust

4   ("NOD") was filed with the Kern County Recorder's Office as Document No. 000216023027. (*Id.* ¶ 20.)

5       Following denial of his first modification request, Plaintiff worked additional hours to increase

6   his income. (*Id.* ¶ 21.) In April 2016, Plaintiff informed Wells Fargo that his income had increased and

7   they advised him to reapply for a modification. (*Id.* ¶ 22.) On April 25, 2016, Plaintiff submitted "a full

8   modification package to Wells Fargo, including a statement and paystubs showing his increased

9   income." (*Id.* ¶ 23.) On April 27, 2016, a Wells Fargo representative informed Plaintiff that his

10  application had been denied because his new income was insufficient. (*Id.* ¶ 24.) The Complaint alleges

11  that Plaintiff did not receive an explanation for the denial, nor did he receive a written notice of denial or

12  information regarding his right to appeal. (*Id.*)

13      On April 27, 2016, a rescission of the February 25, 2016 NOD was filed with the Kern County

14  Recorder's Office as Document No. 000216052779. (*Id.* ¶ 25.) On April 28, 2016, a new NOD was filed

15  with the Kern County Recorder's Office as Document No. 000216052924. (*Id.* ¶ 26.)

16      Following the second denial, Plaintiff attempted to resume making his monthly payments, but

17  Wells Fargo refused to accept a payment of less than the full default amount. (*Id.* ¶ 27.) On August 10,

18  2016, a Notice of Trustee's Sale ("NTS") was filed with the Kern County Recorder's Office as

19  Document No. 00021605436. (*Id.* ¶ 28.) Defendant is actively moving towards foreclosure of Plaintiff's

20  home. (*Id.* ¶ 29.)

21  **B.    Procedural Background**

22      Plaintiff filed the original complaint on September 1, 2016 in the Superior Court of California,

23  County of Kern. (ECF No. 1-1.) On October 3, 2016, Defendant filed a Notice of Removal pursuant to

24  28 U.S.C. § 1441 and the case was removed to this Court. (ECF No. 1.)

25      On October 12, 2016, Defendant filed a motion to dismiss the complaint for failure to state a

26

1   claim. (ECF No. 5.) Defendant also filed a simultaneous request for judicial notice. (ECF. No. 6.) On

2   November 2, 2016, Plaintiff filed an opposition to Defendant's motion (ECF No. 8),[1] as well as a motion

3   for remand, (ECF No. 9). Defendant filed a reply to Plaintiff's opposition to the motion to dismiss on

4   November 8, 2016, (ECF No. 10), and an opposition to Plaintiff's motion for remand on November 17,

5   2016, (ECF No. 12). Plaintiff filed a reply to Defendant's opposition to the motion for remand on

6   November 23, 2016. Both the motion to dismiss and the motion for remand are ripe for review. Because

7   "determination of the remand issue will facilitate litigation in the appropriate forum," and because

8   "judicial economy will be best served by addressing the remand issue," the Court first considers the

9   motion for remand. *Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) (internal

10  quotation marks and citations omitted)

11  ### III. **MOTION FOR REMAND**

12  A state-court defendant may remove a case from state to federal court if the federal courts would

13  have original jurisdiction over the case. 28 U.S.C. § 1441(a). To accomplish this task, the removing

14  defendant files a notice of removal in the federal district court in the district and division within which

15  the state court action was pending. 28 U.S.C. § 1446(a). The notice must contain "a short and plain

16  statement of the grounds for removal"—in a case relying on diversity jurisdiction, that the parties are

17  citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a)—

18  "together with a copy of all process, pleadings, and orders" served previously on the removing

19  defendant. 28 U.S.C. § 1446(a).

20  The plaintiff may then challenge the removal on the basis that the requirements for subject-

21  

22  [1] Plaintiff filed its opposition to Defendant's motion to dismiss one day late. *See* L.R. 230(c) ("Opposition, if any, to the granting of the motion shall be in writing and shall be filed and served not less than fourteen (14) days preceding the noticed (or continued) hearing date.") Defendant requests that the Court not consider Plaintiff's opposition, arguing that Defendant

23  was prejudiced in preparing its reply brief. *See* ECF No. 10. Although Plaintiff's filing was untimely, the Court does not believe Defendant was prejudiced in any meaningful way. The Court therefore exercises its discretion to consider the opposition. However, the court admonishes Plaintiff's counsel for failing to follow the Local Rules. *Cotta v. Cty. of Kings*, 79

24  F. Supp. 3d 1148, 1156 (E.D. Cal. 2015), on reconsideration in part on different grounds, No. 1:13-CV-359-LJO-SMS, 2015 WL 521358 (E.D. Cal. Feb. 9, 2015) (considering opposition filed one day late "not to reward an officer of this Court who violates the rules he is obligated to know and follow, but so as not to punish a party who hired a lawyer it thought would

25  know and follow the rules."). Future transgressions will be handled in a different manner.

26

matter jurisdiction have not been met. There are two requirements for the proper exercise of this Court's diversity jurisdiction. *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015) (citing 28 U.S.C. § 1332(a)(1)). The first requirement is "complete diversity" of the parties, meaning that "no plaintiff can be a citizen of the same state as any of the defendants." *Majestic Ins. Co. v. Allianz Intern. Ins. Co.*, 133 F. Supp. 2d 1218, 1220 (N.D. Cal. 2001) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). The second requirement is that the amount in controversy must exceed $75,000. *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015).

At issue in this case is the second requirement – amount in controversy. Plaintiff does not contest Defendant's position that complete diversity exists between the parties. (ECF No. 1 at 2-3; ECF No. 9 at 3-4.) Rather, Plaintiff contends that Defendant has failed to meet their burden of showing that the amount at issue in this case is greater than $75,000. Defendant counters that because Plaintiff seeks declaratory relief from repossession of his home, the amount in controversy is the full amount of Plaintiff's home loan: $254,591. (ECF No. 12 at 2.) Defendant alternatively posits that the amount in controversy is $243,878.81 – the amount that Plaintiff is in arrears on his loan payment as of the recording of the NTS in August 2016. (*Id.*)

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002) (internal citations omitted). The Ninth Circuit has concluded that the amount in controversy requirement is met where "the whole purpose of [the] action is to foreclose the Bank from selling [the property] in the manner contemplated," and the market value and the outstanding interest on the property exceeds the jurisdictional limit. *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973). Similarly, other courts have concluded that the amount in controversy requirement is met where either the loan amount or the market value of the property exceeds $75,000. *Mouri v. Bank of N.Y. Mellon*, No. EDCV 14-01643-VAP (DTBx), 2014 U.S. Dist. LEXIS 170365 (C.D. Cal. Dec. 9, 2014) ("More specifically, in actions seeking to enjoin residential foreclosures the amount in

1    controversy may be based on the outstanding amount of the loan or the value of the property."); s*ee also*

2    *Reyes v. Wells Fargo Bank, N.A.*, No. C–10–01667 JCS, 2010 WL 2629785 at *4-5 (E.D. Cal. Apr. 23,

3    2010) (discussing cases finding that the object of the litigation was the property plaintiff sought to enjoin

4    the defendant from selling at foreclosure); *Garcia v. Citibank, N.A.*, No. 2:09–CV–03387–JAM–DAD,

5    2010 WL 1658569 (E.D. Cal. Apr. 23, 2010) (measuring the amount in controversy according to the

6    original mortgage loan amount in proceedings to enjoin foreclosure). Where original loan amounts

7    greatly exceed $75,000, courts routinely find the amount in controversy requirement met without

8    specific reference in the complaint or notice of removal to the market value of the real property that

9    secures the mortgage. *See Rose v. J.P. Morgan Chase, N.A.*, No. Civ. 2:12-225 WBS (CMKx), 2012 WL

10   892282, at *2-3 (E.D. Cal. 2012) (current property value "likely" exceeded $75,000 because the

11   "property was used to secure a loan of $349,000"); *Cabriales v. Aurora Loan Servs.*, No. C 10-161,

12   2010 WL 761081, at *3 (N.D. Cal. Mar. 2, 2010) (noting that where "the face of Plaintiffs' complaint

13   clearly demonstrates that they seek to enjoin the sale of their house" and the house is likely valued at

14   more than $75,000, the amount in controversy requirement is met).

15        Here, Plaintiff alleges that he seeks "a temporary restraining order, followed by a preliminary

16   injunction, enjoining Defendant from selling Plaintiff's property at auction." (Compl. ¶ 32; *see also id.*

17   ¶¶ 44-45.) Both the original and outstanding loan amounts on the property at issue are well in excess of

18   the $75,000 statutory amount in controversy requirement. Using either metric, Defendant has met its

19   burden of establishing that the amount in controversy exceeds the statutory requirement and therefore

20   that this Court has diversity jurisdiction over this case.

21        Plaintiff cites several cases in support of the proposition that this court should not consider the

22   property value or total loan amount as the amount in controversy. *See Jauregui v. Nationstar Mortg.*

23   *LLC*, No. EDCV 15-00382-VAP, 2015 WL 2154148, at *4 (C.D. Cal. May 7, 2015); *Olmos v.*

24   *Residential Credit Sols., Inc.*, 92 F. Supp. 3d 954, 956-57 (C.D. Cal. 2015). These cases are inapposite

25   because in both cases plaintiffs requested only temporary relief pending the outcome of their loan

26                                                              6

1    modification applications. In *Olmos*, plaintiff sought temporary relief pending a loan modification

2    determination, alleging that defendants violated state law by recording a notice of default while

3    plaintiff's application for a loan modification was still pending. *Olmos*, 92 F. Supp. 3d at 955-56.

4    Similarly, in *Jauregui*, the court declined to conclude that the entire loan amount was in controversy

5    where the complaint asked that "foreclosure activity be ceased until a written determination on his loan

6    modification application is conveyed to him." 2015 WL 2154148, at * 4. Here, Plaintiff admits that both

7    his requests for a loan modification were denied, (Compl. ¶¶ 24, 27), and acknowledges that foreclosure

8    proceedings have already been initiated. *See Cabriales*, 2010 WL 761081, at *3 (amount in controversy

9    met where plaintiff's complaint demonstrated that they sought to enjoin the sale of their property); *Uribe*

10   *v. Bank*, No. CV 15-9053-R, 2016 WL 409666, at *1 (C.D. Cal. Feb. 1, 2016) (finding the amount in

11   controversy was not met but distinguishing cases where foreclosure proceedings had already been

12   initiated). Plaintiff places the entire value of the property at issue by requesting that the Court enjoin the

13   *sale* of his property. (Compl. ¶ 32). Plaintiff's motion for remand is therefore DENIED.

14                                    **IV.  REQUEST FOR JUDICIAL NOTICE**

15          In its request for judicial notice in connection with its motion to dismiss, Defendant asked the

16   Court to take judicial notice of the Deed of Trust, NOD, and NTS. (ECF No. 6, at 1-2.)

17          Under Federal Rule of Evidence 201, the court may take judicial notice of "a fact that is not

18   subject to reasonable dispute because it can be accurately and readily determined from sources whose

19   accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In addition, the Court also may take

20   judicial notice of material incorporated by reference into the complaint without converting the motion to

21   dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

22   Cir. 2010); *Intri–Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Documents

23   are incorporated into the complaint by reference "in situations where the complaint necessarily relies

24   upon a document or the contents of the document are alleged in a complaint, the document's authenticity

25   is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement*, 593

26

F.3d at 1038; *see also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

All three documents offered by Defendant are copies of official public records filed with the Kern County Recorder's Office. (ECF No. 6 at 2.) These documents are part of the public record and easily verifiable. *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992). Courts regularly consider recorded documents related to a foreclosure sale on a motion to dismiss. *See, e.g.*, *Gamboa v. Trustee Corps & Cent Mtg. Loan Serv. Co.*, No 09-0007, (N.D. Cal. Mar. 12, 2009); *Dodd v. Fed. Home Loan Mortg. Corp.*, No. CIV S-11-1603 JAM, 2011 WL 6370032, at *1 (E.D. Cal. Dec. 19, 2011); *Lazo v. Summit Mgmt. Co., LLC*, No. 1:13-CV-02015-AWI-JL, 2014 WL 3362289, at *5 (E.D. Cal. July 9, 2014), *report and recommendation adopted*, No. 1:13-CV-02015-AWI-JL, 2014 WL 3689695 (E.D. Cal. July 24, 2014). Plaintiff does not dispute the authenticity of the records, nor does he object to the Court taking judicial notice of them. Indeed, all three documents are incorporated by reference in the Complaint. (Compl. ¶¶ 10, 20, 25, 26.) The Court takes judicial notice of Exhibits A-C of Defendant's request for judicial notice. (ECF No. 6 Exs. A-C.)

## V. <u>MOTION TO DISMISS</u>

### A.   <u>Standard of Decision</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

1  the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is

2  required to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has

3  facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5  (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

6  sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

7      While Rule 8(a) does not require detailed factual allegations, "it demands more than an

8  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is

9  insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

10 cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

11 elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it

12 is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants

13 have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal.,*

14 *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must

15 contain either direct or inferential allegations respecting all the material elements necessary to sustain

16 recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must

17 describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

18      "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by

19 amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the

20 pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to

21 amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.

22 1990) (citations omitted).

23

24

25

26

**B.**     **Analysis**

  **1.**     **First Cause of Action: HBOR pursuant to California Civil Code §§ 2923.6, 2923.7, 2923.55**

    **a.**     **California Civil Code § 2923.6**

Plaintiff brings a claim under HBOR alleging that Defendant followed improper procedures in considering Plaintiff's loan modification application in violation of California Civil Code § 2923.6. Plaintiff alleges that "following both denials, WELLS FARGO failed to provide him with the required written notice . . . Plaintiff was never informed of his right to appeal the denials, what calculations were used in review, or what alternatives were available." (Compl. ¶ 38.) Defendant counters that Plaintiff has not pled sufficient facts regarding their loan modification application to support such a claim. (ECF No. 5 at 3-6.)

Section 2923.6 provides that a mortgage servicer may not record a notice of default, a notice of sale, or conduct a trustee's sale until the servicer make a written determination that the borrower is not eligible for a loan modification. Cal. Civ. Code § 2923.6(c). This provision is only triggered, however, if the borrower has submitted "a complete application for a first loan modification." *Id.*; *see also Gonzales v. Wells Fargo Bank NA*, No. C 14-03850 JSW, 2015 WL 877440, at *3 (N.D. Cal. Feb. 27, 2015). Plaintiff alleges that he "temporarily withheld payments and submitted all requested documents to Wells Fargo to be considered for a loan modification." (Compl. ¶ 15.) After his initial loan modification request was denied in January of 2016, he submitted "a full modification package to Wells Fargo, including a statement and paystubs showing his increased income" on April 25, 2016. (*Id.* ¶ 23.)

Plaintiff's bare allegations that he submitted complete loan modification applications are insufficient to withstand a motion to dismiss. *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2014 WL 4359193, at *7 (C.D. Cal. Sept. 3, 2014). As one district court explained:

> Whether a loan modification application is "complete" is a legal determination that must be made by considering the mandates of section 2923.6(h). A bald allegation that a party submitted "complete" loan modification applications-without sufficient supporting

10

1    factual allegations-is a conclusory statement, and the Court does not rely on such
     assertions in evaluating the sufficiency of Plaintiff's complaint. *Iqbal*, 556 U.S. at 679.

2

3    *Id.*; *see also Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1111–12 (E.D. Cal. 2015)

4    ("the assertions that the applications were 'complete' are conclusions, rather than factual allegations,

5    and not entitled to the assumption of truth); *Saridakis v. JPMorgan Chase Bank*, No. CV 14-06279 DDP

6    EX, 2015 WL 570116, at *2 (C.D. Cal. Feb. 11, 2015) (allegation that plaintiff "submitted a completed,

7    legible and satisfactory loan modification application" was insufficient to sustain a claim under section

8    2923.6); *Woodring v. Ocwen Loan Servicing, LLC*, No. CV 14-03416 BRO EX, 2014 WL 3558716, at

9    *7 (C.D. Cal. July 18, 2014) (allegation of a complete loan modification application under section

10   2923.6 requires "the submission of much more robust factual allegations" than mere conclusory

11   statement that loan application was complete). Here, Plaintiff provided no factual details in connection

12   with his allegation that he submitted a complete loan application sometime in the fall of 2015. (*See*

13   Compl. ¶¶ 15-18.) Furthermore, plaintiff did not provide factual allegations regarding the submission of

14   his April 2016 loan modification application, except to state that it included "a statement and paystubs

15   showing his increase in income." (*Id.* ¶ 23.) Plaintiff does not allege that the documents included with

16   the second application demonstrated a material change in income in accordance with § 2923(g). These

17   allegations are plainly insufficient to state a claim for relief under § 2923.6. *See Cornejo*, 151 F. Supp.

18   3d at 1111-12. Defendant's Motion to Dismiss Plaintiff's claim under California Civil Code § 2923.6 is

19   GRANTED WITH LEAVE TO AMEND.

20            **b.    California Civil Code § 2923.7**

21        Section 2923.7(a) provides that "[u]pon request from a borrower who requests a foreclosure

22   prevention alternative, the mortgage servicer shall promptly establish a single point of contact and

23   provide to the borrower one or more direct means of communication with the single point of contact."

24   Cal. Civ. Code § 2923.7(a). Subsections (b) through (d) enumerate certain duties of the single point of

25   contact ("SPOC"), including communicating the process for applying for foreclosure prevention

26

1  alternatives to the buyer, indicating deadlines, informing the borrower of the status of their foreclosure

2  prevention alternative applications, and having access to individuals with the ability to stop foreclosure

3  proceedings when necessary, among others. § 2923(b)-(d). Sub-section (e) defines SPOC as "an

4  individual or team of personnel each of whom has the ability and authority to perform the

5  responsibilities" required under the statute. § 2923(e).

6      Plaintiff alleges in the Complaint that he "asked Wells Fargo to provide him with a

7  representative he could contact directly for assistance, which WELLS FARGO failed to do" in violation

8  of § 2923.7(a). (*Id.* ¶ 17.) Later in the Complaint, Plaintiff alleges, "[de]spite Plaintiff's request for

9  assistance with an alternative to foreclosure, in addition to his specific request for a SPOC, the numerous

10  representatives at Wells Fargo Plaintiff spoke with were unable and/or unwilling to help and consistently

11  gave Plaintiff vague and inconsistent answers to questions." (Compl. ¶ 40.)

12      Defendant argues that Plaintiff's admission that he spoke with "numerous representatives"

13  implies that Wells Fargo did not violate § 2923.7, because the statute allows a team of representatives to

14  serve as the SPOC. (ECF No. 5 at 6.) In his opposition, Plaintiff appears to concede that he was assigned

15  a SPOC team, but argues that those representatives violated §2923.7 by giving him "conflicting answers

16  and inaccurate status updates." (ECF No. 8 at 8 ("Plaintiff does not disagree that the code does allow for

17  a team of representatives . . . Plaintiff alleges Defendants violated the code because the 'team' gave

18  conflicting answers and inaccurate status updates.") Therefore, the argument continues, Plaintiff does

19  not adequately allege a violation of § 2923(a), and indeed appears to concede that Defendant did not

20  violate § 2923(a).

21      However, Plaintiff's concession that he had been assigned a SPOC does not preclude the

22  possibility of a § 2923.7 violation. *See Wilkins v. Bank of Am., N.A.*, No. 215CV02341KJMEFB, 2016

23  WL 5940082, at *6-7 (E.D. Cal. Aug. 19, 2016). "[A] mortgage servicer may not simply make a

24  nominal 'appointment' of an SPOC who never communicates with the borrower." *Mungai v. Wells

25  Fargo Bank*, No. 14-00289, 2014 WL 2508090, at *10 (N.D. Cal. June 3, 2014) (citation omitted).

26                                          12

1   Plaintiff alleges that he requested a SPOC[2], and that Wells Fargo representatives did not meet the

2   obligations of a SPOC under § 2923.7(b)-(d). (Compl. ¶ 17.); *see Hendricks v. Wells Fargo Bank, N.A.*,

3   No. CV-15-01299-MWF JEMX, 2015 WL 1644028, at *8-9 (C.D. Cal. Apr. 14, 2015) (plaintiff's

4   allegation that he was given conflicting instructions from lender's representatives and that he did not

5   obtain information regarding the reason for his loan modification denial were sufficient to state a claim).

6        Defendant argues that Plaintiff's claim that Wells Fargo "failed to offer adequate assistance to

7   Plaintiff" (Compl. ¶ 52), is belied by his allegation that he received denials on his applications. (ECF

8   No. 5 at 6.) This argument misses the mark. Under § 2923.7, the SPOC has a number of obligations to

9   Plaintiff that go beyond a mere obligation to render a decision on Plaintiff's application. For example,

10  the Plaintiff alleges that Wells Fargo representatives failed to provide him with information regarding

11  the status of his application despite repeated requests, that he was transferred to multiple representatives

12  who could not answer his questions or confirm if his application was being reviewed, and that he was

13  not provided with an explanation for why his applications were denied. (Compl. ¶¶ 15-18, 24.) Plaintiff

14  further alleges that Wells Fargo representatives were "unable and/or unwilling to help" and gave him

15  "vague and inconsistent answers" and that their actions "cost Plaintiff both valuable time and the ability

16  to exercise his right to appeal and ensure the denial was based on accurate calculations and

17  information." (*Id.* ¶ 40.) If true, these allegations plausibly allege that Wells Fargo violated § 2923.7(b).

18  *See Hixson v. Wells Fargo Bank NA*, No. C 14-285 SI, 2014 WL 3870004, at *6 (N.D. Cal. Aug. 6,

19  2014) (plaintiff sufficiently alleged a violation of § 2923.7 where he plead that he was "unable to receive

20  information" from his SPOC team because they "refused to answer plaintiff's telephone calls at all");

21  *Hernandez v. Specialized Loan Servicing, LLC*, No. CV 14-9404-GW JEMX, 2015 WL 1401784, at *4

22  (C.D. Cal. Mar. 23, 2015) (allegation that plaintiff was "bounced from representative to representative;

23  _____

24  [2] Courts are divided on whether a borrower must specifically request a SPOC or whether a request for foreclosure alternatives triggers the lender's obligation to provide a SPOC under § 2923.7. *Compare Williams v. Wells Fargo Bank*, 2014 WL 1568857, at *8 (C.D. Cal. Jan. 27, 2014 *with McFarland v. JP Morgan Chase Bank*, 2014 WL 4119399, at *11 (C.D.Cal.

25  Aug. 21, 2014). The Court need not address that issue here, as Plaintiff specifically alleges in the Complaint that he requested a SPOC. (Compl. ¶ 17.)

26                                                     13

that she often received conflicting or inconsistent information; that different representatives repeatedly asked her to re-submit documents she had submitted to other representatives; and that, at times, she could not get someone on the phone familiar with her file" were sufficient to state a claim under §2923.7.

Defendant further argues that even if Plaintiff has pled sufficient facts to state a claim, he has not pled facts to suggest that the violation was material. (ECF No. 5 at 7-8.) However, Plaintiff alleges that "Defendant's inability to accurately inform Plaintiff of his application status or his ability to appeal the denials cost Plaintiff both valuable time and the ability to exercise his right to appeal." (Compl. ¶ 40.) "The purpose of the HBOR is to ensure that servicers adequately consider borrowers for loss mitigation options." *Hendricks*, 2015 WL 1644028, at *9. Plaintiff adequately alleges at this stage that had the SPOC acted in accordance with the requirements of § 2923.7, he would have at least been provided a basis for the loan modification denial allowing him to pursue further the loan modification process by, for example, filing an appeal. *Id.* ("at the very least, [plaintiff] would have received clear, non-contradictory answers to his inquiries regarding his modification, including the basis for his denial allowing him to appeal"); *see also Stinson v. Specialized Loan Servicing, LLC*, No. 216CV01903MCEGGH, 2016 WL 6524864, at *4 (E.D. Cal. Nov. 3, 2016) (allegation that "[defendant SPOC's] failure to comply with [its] statutory duties effectively barred [plaintiff] from the mortgage modification process" was sufficient to state a claim under § 2923.7); *Boone v. Specialized Loan Servicing LLC*, No. 15-CV-02224-DMR, 2015 WL 4572429, at *4 (N.D. Cal. July 29, 2015) (allegations sufficient at motion to dismiss where plaintiff alleged that SPOC's incompetence "deprived them of the opportunity to obtain the modification"). These allegations are sufficient, where, as here, Plaintiff seeks injunctive relief prior to a foreclosure sale. § 2924.12(a). Defendant's motion to dismiss Plaintiff's § 2923.7 claim is DENIED.

    c.  **California Civil Code § 2923.55**

Plaintiff alleges that Defendant failed to provide the required written information to Plaintiff,

1    including notice of his right to request certain documents, in violation of § 2923.55. *Id.* (providing that

2    the mortgage servicer must provide the borrower with a statement explaining that the borrower may

3    request a copy of the borrower's promissory note, the borrower's deed of trust, a copy of any

4    assignment, and a copy of the borrower's payment history). Defendant counters that these allegations are

5    not pled with sufficient particularity, and that Plaintiff merely recites the elements of the statute without

6    providing factual allegations to support them. (ECF No. 5 at 7.) In his opposition, Plaintiff does not

7    address Defendant's arguments or his claim under § 2923.55. In its reply, Defendant contends that

8    Plaintiff has abandoned the claim by failing to respond to it. (ECF No. 10 at 6.)

9        There is some support for the notion that arguments that are not opposed are conceded. *Hall v.*

10    *Mortgage Investors Group*, No. 2:11-CV-00925-JAM-GGH, 2011 WL 4374995, *5 (E.D. Cal. Sept. 16,

11    2011) (failure to oppose argument amounts to a concession as to the truth of the argument); *Foster v.*

12    *City of Fresno*, 392 F. Supp. 2d 1140, 1147 n.7 (E.D. Cal. 2005) ("failure of a party to address a claim in

13    an opposition to a motion for summary judgment may constitute a waiver of that claim"); *Ramirez v.*

14    *Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (finding that the failure to respond to

15    argument amounts to a concession that the argument has merit).

16        More importantly, however, Plaintiff's allegations under § 2923.55 fail to state a claim because

17    the allegations merely recite the elements of § 2923.55 without any supporting factual detail. (Compl.¶¶

18    41-42.) Such conclusory allegations are inadequate as a matter of law. *Iqbal*, 556 U.S. at

19    678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

20    do not suffice."). Moreover, to state a claim Plaintiff must plead "a material violation of one of the

21    enumerated code sections" *Rockridge Trust v. Wells Fargo, N.A.*, No. C-13-01457 JCS, 2013 WL

22    5428722 (N.D. Cal. Sept. 25, 2013). Plaintiff fails to offer any factual allegations as to how he suffered

23    harm by, for example, alleging that the outcome of the loan modification process would have been

24    different if Wells Fargo had provided notice that Plaintiff could request documents pertaining to his

25    loan. *Heflebower v. JPMorgan Chase Bank, NA*, No. 1:12-CV-1671 AWI SMS, 2014 WL 897352, at

26

15

1

2

3

4

5

\*13 (E.D. Cal. Mar. 6, 2014) (dismissing § 2923.55 claim where plaintiff "d[id] not demonstrate anywhere in the [complaint] that he was harmed by Defendant's actions in any specific way"); *Cornejo*, 151 F. Supp. 3d at 1114 (plaintiffs did not allege materiality where they "d[id] not allege they would have taken any different actions related to seeking loan modification). Plaintiff's § 2923.55 allegations are DISMISSED WITH LEAVE TO AMEND.

6

7

### 2. Second Cause of Action: Violation of the UCL, California Business & Professions Code § 17200

8

9

10

11

12

13

14

Plaintiff alleges that Wells Fargo violated the UCL through a "pattern or practice" of "unlawfully and unfairly proceeding with foreclosure against California homeowners, including Plaintiff." (Compl. ¶¶ 48, 51.) Defendant argues that Plaintiff lacks standing to pursue a UCL claim because he has not demonstrated that he lost money or property as a result of the alleged UCL violation because no foreclosure sale has yet taken place. (ECF No. 5 at 11.) Defendant further argues that Plaintiff has not pled the requisite underlying violation on which his UCL claim is predicated, and that he has not alleged sufficient facts regarding ongoing unlawful, unfair, and fraudulent business acts on the part of Wells Fargo. (*Id.* at 9-10.)

15

16

#### a. Standing

17

18

19

20

21

22

23

24

25

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir. 2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (internal citation omitted). "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered the same harm whether or not a defendant complied with the law." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523

26

1   (2013) (internal quotation marks and citations omitted).

2        For example, in *Jenkins*, the court found the plaintiff lacked standing under the UCL because she

3   could not establish a causal link between the foreclosure of her home and the defendant's six unlawful or

4   unfair acts, all of which occurred after the plaintiff defaulted on her loan. 216 Cal. App. 4th at 523. Even

5   if the defendant had not acted unfairly, the plaintiff still would have defaulted and suffered the same

6   economic injury.

7        Here, Plaintiff has pled concrete economic harm as a result of this practice. Plaintiff alleges that

8   he has incurred foreclosure fees and costs that have already been charged and added to Plaintiff's loan.

9   (Compl. ¶ 55); *see also Kasramehr v. Wells Fargo Bank N.A.*, No. CV 11-0551 GAF OPX, 2011 WL

10   12473383, at *11 (C.D. Cal. May 18, 2011) (plaintiff alleging that she had been charged foreclosure fees

11   and costs had standing to pursue UCL claim against lender). Plaintiff further alleges that unlawful

12   practices by Wells Fargo led him to default on his mortgage. Unlike *Jenkins*, where the plaintiff alleged

13   UCL violations that occurred after she defaulted, Plaintiff here has alleged that Wells Fargo's violations

14   were the *reason* that he stopped making payments on his home loan and contributed to his inability to

15   secure a modification and to the incurrence of various fees and costs. (Compl. ¶ 15.) "Where a plaintiff

16   has made payments to the mortgage servicer in connection with the business practice that is the subject

17   of the UCL claim, plaintiff has standing to state a UCL claim." *Wilkins v. Bank of Am., N.A.*, No.

18   215CV02341KJMEFB, 2016 WL 5940082, at *7-8 (E.D. Cal. Aug. 19, 2016); *see also Reyes v. Wells*

19   *Fargo Bank, N.A.*, No. C-10-01667, 2011 WL 30759, at *21 (N.D. Cal. Jan. 3, 2011) (same). Plaintiff

20   has standing to pursue his UCL claim.

21             **b.**    **Failure to State a Claim**

22        "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

23   unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 703 P.2d 58, 69 (Cal. 1985)

24   (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition—

25   "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Grp., Inc.*, 81 Cal.

26

App. 4th 1153, 1157 (2000).

"An unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Blank*, 703 P.2d at 69 (internal quotation marks and citations omitted); *see also Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002) ("A business practice is 'unlawful' if it is 'forbidden by law'" (internal quotation marks and citations omitted)).The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal. App. 4th at 1170. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court*, 826 P.2d 730, 2 Cal. 4th 377, 383 (1992). To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 540 (Cal. 1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g.*, *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." *Rothschild v. Tyco Internat'l (US), Inc.*, 83 Cal. App. 4th 488, 494 (2000).

Plaintiff alleges that its UCL claims are predicated on violations of HBOR, specifically sections 2923.6 and 2923.7. (Compl. ¶¶ 51-52.) As previously discussed, Plaintiff fails to state a claim under § 2923.6, but states a claim under § 2923.7. Because Plaintiff has pled a valid claim under a borrowed law, Plaintiff's UCL claim may proceed to the extent that it is premised on a violation of § 2923.7. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("[V]irtually any state, federal

18

or local law can serve as the predicate for an action under section 17200.") (internal citations omitted). Because Plaintiff has pled a claim under the "unlawful" prong, the Court need not address the "unfair" and "fraudulent" prongs.

Defendant's motion to dismiss Plaintiff's second cause of action under the UCL is DENIED.

### 3.   <u>Third Cause of Action: Breach of Covenant of Good Faith and Fair Dealing</u>

Plaintiff alleges that Defendant breached an implied covenant of good faith and fair dealing by inducing Plaintiff to stop making payments on his mortgage loan and by "prolonging the decision of whether Plaintiff would receive assistance." (Compl. ¶ 61.) In so doing, Defendant excused Plaintiff from performing. (*Id.* ¶ 64.) Defendant counters that the contract between Plaintiff and Defendant explicitly requires Plaintiff to make timely monthly payments and any implied covenant could not alter the express terms of the contract. (ECF No. 5 at 12-13.)

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and Cnty. of San Francisco*, 225 Cal. App. 3d 38, 49 (1990). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004) (internal citation omitted) (emphasis in original). "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant." *Smith*, 225 Cal. App. 3d at 49.

Plaintiff does not allege that Defendant promised to modify the loan, only that one of its representatives indicated that Plaintiff "would qualify" for loan modification based on the information provided by Plaintiff. (Compl. ¶ 15.) Plaintiff provides no evidence to suggest that Defendant was contractually obligated to modify his loan. As HBOR explicitly states, "[n]othing in the act . . . shall be interpreted to require a particular result." § 2923.4(a). The express terms of the contract require Plaintiff to make timely monthly payments. (ECF No. 6, Ex. A at 4.) Plaintiff's allegation that he was induced to

1  miss monthly payments cannot support a claim based on an implied covenant, because such an

2  agreement would extend the agreement "to create obligations not contemplated by the contract."

3  *Pasadena Live*, 114 Cal. App. 4th at 1093-94.

4        Most courts that have considered whether an inducement not to make loan payments could

5  support a cause of action for breach of implied covenant have concluded that it does not. *See Fevinger v.*

6  *Bank of Am., N.A.*, No. 5:13-CV-04 839-PSG, 2014 WL 3866077, at *4 (N.D. Cal. Aug. 4, 2014)

7  ("[plaintiff's election to skip payments ultimately was [his] alone to make . . . . The choice to pay or not

8  to pay remained with [plaintiff]") (internal quotations marks and citations omitted); *Ha v. Bank of Am.,*

9  *N.A.*, No. 5:14-CV-00120-PSG, 2014 WL 3616133, at *9-10 (N.D. Cal. July 22, 2014) (same); *Ren v.*

10 *Wells Fargo Bank, N.A.*, No. 13-0272 SC, 2013 WL 5340388, at *2 (N.D. Cal. Sept. 24, 2013) ("The

11 Court dismissed this claim in Plaintiff's FAC because Defendant never actively interfered with

12 Plaintiff's payments. It told Plaintiff that she could enter the loan modification process by going late on

13 her payments, but that was a choice only Plaintiff could make."); *Franczak v. Suntrust Mortg. Inc.*, No.

14 5:12-CV-01453 EJD, 2013 WL 843912, at *3-4 (N.D. Cal. Mar. 6, 2013) ("Being left with an

15 impression that a particular action is encouraged is something very different than actually being required

16 to do something").[3]

17       Plaintiff's third cause of action for breach of the covenant of good faith and fair dealing is

18 DISMISSED WITH LEAVE TO AMEND.

---

20 [3] Several courts have reached the opposite conclusion, but the facts in those cases are distinguishable. In *Lavarias v. Wells Fargo Home Mortgage*, the court distinguished the *Franczak* line of cases and concluded that plaintiff had pled a claim for breach of implied covenant where defendant "did more than give her the impression that going into default would secure a loan modification . . . [defendant] instructed her to default and also assured her it would not initiate foreclosure while

21 [p]laintiff was in loan modification review." No. 216CV00901JAMKJN, 2016 WL 4148300, at *5 (E.D. Cal. Aug. 4, 2016). Here, plaintiff alleges only that Wells Fargo indicated that "in order to apply [for loan modification] he needed to be behind

22 on his payments." (Compl. ¶ 14.) As in *Franczak* line of cases, the choice of whether or not to continue to make payments rested entirely with Plaintiff. 2013 WL 843912, at *3-4. The cases that *Lavarias* relies on reached the conclusion that the

23 implied covenant was breached based on similarly distinguishable facts. *See Hatton v. Bank of Am., N.A.*, No. 1:15-CV-00187-GSA, 2015 WL 4112283, at *5 (E.D. Cal. July 8, 2015) (denying motion to dismiss where plaintiffs alleged they

24 "chose not to make later payments based *solely on [d]efendant's insistence* that payments were not required during the course of applying for a modification" (emphasis added) (internal quotation marks omitted)); *Harvey v. Bank of Am., N.A.*, No. 12-3238 SC, 2013 WL 632088, at *3 (N.D. Cal. Feb. 20, 2013) (denying motion to dismiss where lender allegedly "advis[ed]

25 [p]laintiff not to make payments in order to apply for a loan modification and . . . promis[ed] Plaintiff that it would not report him late or foreclose on his property while his loan modification application was under review").

26

1

### 4. **Fourth Cause of Action: Negligence**

2

Plaintiff alleges that Defendant negligently conducted his loan modification process by "advising

3 [him] to fall behind on his mortgage, stringing [him] along for months in pursuit of a modification, and

4 then failing to inform him of his right to appeal the denials." (Compl. ¶ 75.) Defendant argues that Wells

5 Fargo did not owe plaintiff a legal duty of care in connection with its loan servicing, modification, and

6 foreclosure. (ECF No. 5 at 14.)

7

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

8 breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's

9 injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted). "The

10 existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for

11 negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1095 (1991). "The

12 existence of a legal duty to use reasonable care in a particular factual situation is a question of law for

13 the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal. App. 4th 269, 278 (2004)

14 (citation omitted). The 'legal duty' of care may be of two general types: (a) the duty of a person to use

15 ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative

16 duty where the person occupies a particular relationship to others . . . . In the first situation, he is not

17 liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to

18 prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016-17 (1997).

19

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the

20 institution's involvement in the loan transaction does not exceed the scope of its conventional role as a

21 mere lender of money." *Nymark*, 231 Cal. App. 3d at 1096 (1991). "Liability to a borrower for

22 negligence arises only when the lender actively participates in the financed enterprise beyond the

23 domain of the usual money lender." *Id.* (internal quotations omitted); *see also Wagner v. Benson*, 101

24 Cal. App. 3d 27, 35 (1980) (describing "active participation" in a financed enterprise as something

25 requiring "extensive control and shared profits").

26

21

1    There is a split among California state courts and federal courts interpreting California law as to

2  whether a lender owes a duty of care in processing a loan modification application. *See Carbajal v.*

3  *Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG PLAX, 2015 WL 2454054, at *5 (C.D. Cal. Apr. 10,

4  2015) (describing the split and collecting cases). Plaintiff relies on *Alvarez v. BAC Home Loans*

5  *Servicing LP*, 228 Cal. App. 4th 941 (2014), for the proposition that when lending institutions mishandle

6  loan applications or make specific representations to borrowers concerning loans, the lender owes a duty

7  of care to the borrowers. (ECF No. 8 at 11.) However, a growing number of courts, including district

8  courts in this circuit, have concluded that that loan modification does not create a duty of care on behalf

9  of the lender. *See Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013)

10 (disagreeing that "a residential lender owes a common law duty of care to offer, consider, or approve a

11 loan modification, or to explore and offer foreclosure alternatives"); *Cornejo*, 151 F. Supp. 3d 1102

12 (declining to follow *Alvarez* and choosing instead to follow *Lueras* because even if the plaintiffs were

13 "captive" to the financial lenders, there was no showing that they entered into any non-traditional,

14 special relationship with the lender); *Carbajal*, 2015 WL 2454054, at *6 ("The Court fails to discern

15 how considering an application for the renegotiation of loan terms could fall outside the scope of a

16 lender's conventional role as a lender of money."); *Marques v. Wells Fargo Bank, N.A.*, No. 16-CV-

17 03973-YGR, 2016 WL 5942329, at *7 (N.D. Cal. Oct. 13, 2016) (noting the split and concluding that a

18 growing number of courts have adopted the holding in *Lueras*).

19    The Court is persuaded by the reasoning in *Lueras* and *Cornejo*. As the California Court of

20 Appeal explained in *Lueras*, "[a] lender's obligations to offer, consider, or approve loan modifications

21 and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations,

22 and relevant directives and announcements from the United States Department of the Treasury, Fannie

23 Mae, and other governmental or quasi-governmental agencies." *Lueras*, 221 Cal. App. 4th at 67. Such

24 activities, as other courts have found, are indistinguishable from the process of providing an original

25 loan, and therefore, fall within the lender's "conventional role as a lender of money." *See Griffin v.*

26

1    *Green Tree Servicing, LLC*, No. 14-CV-9408-MMM, 2015 WL 10059081, at *14 (C.D. Cal. Oct. 1,

2    2015).

3            Moreover, recently the Ninth Circuit has held that under California law, lenders do not owe

4    borrowers a duty of care to process a borrower's loan modification application within a particular time

5    frame. *Anderson v. Deutsche Bank Nat. Trust Co. Americas*, 649 Fed App'x 550, 552 (9th Cir. May 4,

6    2016). The Ninth Circuit explained that, while harm to borrowers is a foreseeable result of delays in the

7    processing of loan modification applications, it is "neither certain nor primarily attributable to the

8    lender's delay in the processing." *Id.* Rather, because the borrowers' default makes the modification

9    necessary, the resulting harm is "not . . . closely connected to the lender's conduct" and the lender's

10   conduct is not morally blameworthy. *Id.* (quoting *Lueras v. BAC Home Loans Servicing, LP,* 221 Cal.

11   App. 4th 49, 67 (2013)). Therefore, to the extent Plaintiff's claim relies on the allegation that Defendant

12   was "stringing [him] along for months in pursuit of a modification" (Compl. ¶ 75), it is insufficient to

13   establish a duty.

14           Because Defendant did not owe Plaintiff a duty of care in connection with its loan modification

15   and foreclosure proceedings, Plaintiff's fourth cause of action for negligence is DISMISSED WITH

16   LEAVE TO AMEND.

17           **5.        Fifth Cause of Action: Negligent Infliction of Emotional Distress ("NIED")**

18           Plaintiff alleges that Defendant "negligently inflicted emotional distress upon him" by

19   wrongfully proceeding with foreclosure of his home. (Compl. ¶¶ 94-95.) Plaintiff's claim fails for two

20   principal reasons. First, NIED claims are predicated on negligence. California law recognizes that "there

21   is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a

22   cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire &*

23   *Rubber Co.*, 863 P.2d 795, 807 (Cal. 1993). As noted above, Wells Fargo did not owe Plaintiff a duty,

24   and therefore Plaintiff's NIED claim must fail for the same reason his negligence claim fails.

25           Second, under California law, NIED claims generally cannot be predicated on damage to

26                                                         23

property or financial interests. *Erlich v. Menezes*, 981 P.2d 978 (Cal. 1999) ("with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests"); *Robinson v. United States*, 175 F. Supp. 2d 1215, 1228 (E.D. Cal. 2001) (property damage alone could not form basis for NIED claim). The conditions for that narrow exception, clearly not present here, are when defendant "assume[s] a duty to [plaintiff] in which the emotional condition of [plaintiff] [i]s an object." *Granger v. Lowe's Home Centers, LLC*, No. 114CV01212DADSKO, 2016 WL 1138175, at *6 (E.D. Cal. Mar. 23, 2016) (internal citations omitted). Specifically, courts have allowed plaintiffs to recover under an NIED theory in cases that involve "mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable." *Erlich*, 981 P.2d at 987-88; *see also Christensen v. Superior Court*, 148 Cal. App. 3d 576, 588 (1983) (plaintiff could recover for NIED where mortuary mishandled family member's remains even though breach did not cause threat of physical injury to plaintiff); *Burgess v. Superior Court*, 831 P.2d 1197 (Cal. 1992) (mother could recover where obstetrician's negligent delivery injured child). Plaintiff's allegation that his emotional distress resulted Defendant's initiation of foreclosure proceedings on his home does not fit the general rule that NIED claims cannot be predicated on financial or property interests, nor the exception for situations where defendant assumes a duty for plaintiff's emotional well-being. Therefore, Plaintiff's fifth cause of action for NIED is DISMISSED WITH LEAVE TO AMEND.

## VI. <u>CONCLUSION AND ORDER</u>

For the reasons stated above:

1)   Plaintiff's motion to remand the case to state court (ECF No. 9) is DENIED.

2)   Defendant's Motion to Dismiss (ECF No. 5) is GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND:

   a.   Defendant's Motion to Dismiss Plaintiff's cause of action for violation of California Civil Code § 2923.6 is GRANTED WITH LEAVE TO AMEND.

   b.   Defendant's Motion to Dismiss Plaintiff's cause of action for violation of California

Civil Code § 2923.7 is DENIED.

      c.  Defendant's Motion to Dismiss Plaintiff's cause of action for violation of California Civil Code § 2923.55 is GRANTED WITH LEAVE TO AMEND.

      d.  Defendant's Motion to Dismiss Plaintiff's cause of action for violation of the UCL is DENIED.

      e.  Defendant's Motion to Dismiss Plaintiff's cause of action for breach of the covenant of good faith and fair dealing is GRANTED WITH LEAVE TO AMEND.

      f.  Defendant's Motion to Dismiss Plaintiff's cause of action for negligence is GRANTED WITH LEAVE TO AMEND.

      g.  Defendant's Motion to Dismiss Plaintiff's cause of action for negligent infliction of emotional distress is GRANTED WITH LEAVE TO AMEND.

Plaintiff shall have twenty (20) days from electronic service of this Order to file an amended complaint or give notice that he will stand on the current pleading.

IT IS SO ORDERED.

Dated:  **December 9, 2016**          **/s/ Lawrence J. O'Neill**
                              UNITED STATES CHIEF DISTRICT JUDGE